

U.S. Department of Justice

United States Attorney
Eastern District of New York

DCP:PJC
F. #2021R00254

271 Cadman Plaza East
Brooklyn, New York 11201

March 8, 2023

By Email and ECF

The Honorable Eric R. Komitee
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: United States v. Rogelio Vega
       Criminal Docket No. 21-563 (EK)

Dear Judge Komitee:

  The government respectfully submits this letter in advance of the defendant Rogelio Vega's sentencing in the above-referenced matter, which is currently scheduled for March 15, 2023, and in response to the defendant's sentencing submission, dated March 3, 2023 ("Defendant's Submission"). The defendant has pleaded guilty to three counts of coercing and enticing a minor, in violation of Title 18, United States Code, Section 2422(b). As set forth below, a sentence of 30 years' imprisonment, which is below the U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of life imprisonment contemplated in the defendant's plea agreement, would be sufficient, but not greater than necessary, to achieve the goals of sentencing.

I. Background

  Over a period of at least six years, including while the defendant was a deacon[1] in the Catholic Church,[2] the defendant used online communications platforms to solicit several underage male victims for pornographic images and videos and meetings for sex acts. Several of

---

[1] See https://nypost.com/2021/01/22/nyc-church-deacon-charged-with-trying-to-have-sex-with-teen-officials/; Presentence Investigation Report ("PSR") ¶ 29.

[2] According to the Archdiocese of New York, a deacon "is ordained to the ministry of service" and "is a sign of Christ's love and concern for all who are in need—especially the widowed, orphans, the infirm, the elderly, prisoners, couples, teenagers, and all who are in need of the loving and serving heart of Christ." https://archny.org/diaconate-formation-program/.

his underage victims met the defendant on multiple occasions for anal and oral sex in his car and at motels in various locations throughout Brooklyn and Queens.

    A.    <u>State Investigation and Arrest</u>

Between July 2020 and January 2021, the defendant communicated with a New York City Police Department ("NYPD") officer, whom he believed to be a 14-year-old boy, in an effort to meet for sex. PSR ¶ 70. During that period, the defendant repeatedly asked the boy to send "xxx" (nude) pictures and told the boy that he wanted to meet for sex. <u>Id.</u> On January 19, 2021, the defendant met the boy, portrayed by another NYPD officer who presented as a young male, in Queens. <u>Id.</u> The NYPD officer approached the defendant's vehicle, confirmed the defendant's name and entered the vehicle. <u>Id.</u> Once inside, the defendant told the officer, whom he thought was an underaged boy, that he liked "top and oral" and grabbed and massaged the inside of the officer's left thigh. <u>Id.</u> The defendant was arrested and charged with attempted use of a child in a sexual performance, a Class D felony. <u>Id.</u> Five cellular telephones were recovered from the defendant and his vehicle during his arrest. <u>Id.</u> ¶ 8.

On October 27, 2021, the defendant pleaded guilty to the above-referenced state charge. <u>Id.</u> ¶ 28. He was sentenced to ten years' probation. <u>Id.</u> ¶ 70.[3]

    B.    <u>The Defendant Enticed Multiple Minors</u>

On April 15, 2021, the Honorable Roanne L. Mann, United States Magistrate Judge, issued a search warrant authorizing the search of four of the cellular telephones recovered from the defendant and his vehicle. <u>Id.</u> A review of communications and images on those phones revealed that the defendant had used electronic communications platforms, including Grindr and Kik,[4] to arrange for sex with underage victims, discussed below.

    1.    <u>John Doe One</u>

The defendant met John Doe One, then a fifteen-year-old boy, via Grindr. <u>Id.</u> ¶ 18. John Doe One represented in his Grindr profile that he was "15" and told the defendant he was in "school." <u>Id.</u> The defendant told John Doe One that he liked "young guys," and asked John Doe One for nude images and videos, including expressly asking, "Do you have videos of you being fucked?" <u>Id.</u> The defendant sent John Doe One an image of his penis and a video of

---

[3] The Queens County District Attorney's office ("QCDA") was aware of the federal charges pending against the defendant when it disposed of the state case by a plea agreement with an agreed upon sentence of ten years' probation. The government submits that the QCDA's decision to accept a plea with a probationary sentence has no bearing on the appropriate sentence in the federal case.

[4] As explained in the PSR, Grindr markets itself as "[t]he largest social networking app for gay, bi, trans, and queer people," and Kik markets itself as "the only chat platform built especially for teens." PSR ¶¶ 9 n.1, 17 n.4.

him having sex with another male.  Id.  Despite numerous requests, John Doe One never sent the defendant nude images of himself.

The defendant met John Doe One at least three times in person for sex acts.  In the first encounter, the defendant took John Doe One's hand and placed it on the defendant's genitals.  Id. ¶ 19.  In other meetings, the defendant directed John Doe One to perform oral sex on him and ejaculated in his presence.  Id.  The defendant picked up John Doe One near his residence, and John Doe One described the defendant as being "pushy" about them moving to the back of his vehicle where the windows were tinted.  Id.  John Doe One did not have penetrative intercourse with the defendant, despite the defendant offering between $50-$100 and "poppers," a chemical psychoactive drug, to John Doe One.  Id.  In text communications between the defendant and John Doe One, the defendant blended ordinary conversation with a teenager with instructions about their illicit meetups.  The defendant discussed school and homework with John Doe One while also telling him to "bring condoms and something where we can lay down on," instructing him, "don't tell anyone about this."  Id.

2.   John Doe Two

Beginning in at least April 2019, although their communications suggest earlier contact, and continuing through October 2020, the defendant exchanged messages with John Doe Two.  See id. ¶ 9.  These messages make clear that the defendant knew John Doe Two was underage.  On September 27, 2019, John Doe Two told the defendant he could not meet because he was in school at a public high school in downtown Brooklyn.  Id. ¶ 13.  They also discussed how John Doe Two would handle his parents seeing the defendant texting him.  Id.  That same day, John Doe Two expressly told the defendant he was 16.  Id.  On October 26, 2020, the defendant told John Doe 2 he was "into young guys," repeating a line he would often use to solicit his victims.  Id.

The messages between the defendant and John Doe Two include instances where the defendant instructed John Doe Two during a live video stream in which John Doe Two masturbated on camera, including telling him to "[p]ut the camera down so I can see you."  Id. ¶ 10.  The messages also confirm that John Doe Two had sexual intercourse with the defendant.  On September 27, 2019, the defendant messaged John Doe Two, "[w]e met a few times in my car . . . ," and John Doe Two confirmed that the last time he had sex was with the defendant.  Id. ¶ 12.

John Doe Two confirmed to law enforcement that he received nude photographs from the defendant, sent the defendant approximately 20 images and videos, including videos of him masturbating, and conducted at least 10 video chats where the defendant watched him masturbate.  Id. ¶ 15.  John Doe Two also confirmed that he had oral and anal sex with the defendant approximately five to 10 times in the defendant's vehicle.  Id.  On at least one occasion, the defendant—clearly attempting to protect himself while exploiting this teenager— told John Doe Two not to tell anyone because the defendant "could get arrested."  Id.

3

3.  John Doe Three

The defendant met John Doe Three in July 2020 when John Doe Three was just 14 years old. Id. ¶ 17. Similar to exchanges with other victims, the defendant told John Doe Three that he was interested in "[y]oung guys," and John Doe Three told the defendant he was 14. Id. John Doe Three confirmed to law enforcement that he met the defendant approximately three or four times in the defendant's vehicle and once at a motel and they performed oral sex on each other. Id.

4.  Other Victims

Due to the fact that the defendant's victims were near the age of consent and therefore resemble adult males in photos and videos, and the fact that many individuals use aliases on messaging applications, law enforcement had difficulty confirming whether additional of the defendant's sexual partners were underage victims and—to the extent they were underage—their true identities. In addition to the three individual's that form the basis for the charged conduct, law enforcement was able to identify two additional victims.

The defendant met Victim One in 2018 or 2019 when Victim One was approximately 14 or 15 years old. Id. ¶ 22. The defendant met Victim One several times for sex acts, including oral sex approximately five to 10 times and anal sex. Id. ¶¶ 23-24. Initially, Victim One told the defendant that he was 18 years old. Id. On another occasion, the defendant picked up Victim One from his high school, which suggested he possibly was not of age, and took him to a hotel. Id. ¶ 23. The defendant asked if Victim One was really 18 years old, Victim One said that he was, and they had anal sex. Id. In approximately June 2020, Victim One told the defendant he was really 16 years old and that he wanted to stop engaging in sexual activity. Id. ¶ 25. An interview report of this victim reflects that the defendant told Victim One that everything was fine as long as he did not tell anyone. Thereafter, the defendant met Victim One two more times after learning Victim One's true age. Id.

The defendant met Victim Two in 2019 or 2020 when Victim Two was 16 years old. Id. ¶ 26. The defendant sent pictures of his penis to Victim Two and Victim Two reciprocated with photos of his penis. Id.

C.  Procedural History

The defendant was arrested on October 27, 2021 and charged with coercion and enticement of a minor. See Complaint, ECF No. 1. On November 8, 2021, the Grand Jury returned an indictment charging the defendant with three counts of coercion and enticement of a minor, one count of possession of child pornography, in violation of Title 18, United States Code, Section 2252, and one count of sexual exploitation of a minor through the production of child pornography, in violation of Title 18 United States Code, Section 2251(a). See ECF No. 8. The defendant has been in custody since his arrest.

On September 16, 2022, the defendant pleaded guilty before the Honorable Sanket J. Bulsara, United States Magistrate Judge. On December 22, 2022, Your Honor accepted the defendant's guilty plea.

4

II.      <u>Applicable Law</u>

The Supreme Court has explained that a "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration, and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." <u>Gall v. United States</u>, 552 U.S. 38, 49 (2007) (citation omitted).

Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [the court] may not presume that the Guidelines range is reasonable. [The court] must make an individualized assessment based on the facts presented." <u>Id.</u> at 50 (citation and footnote omitted). Specifically, 18 U.S.C. § 3553(a) requires that, in imposing a sentence, a court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; [and]
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

At sentencing, "the court is virtually unfettered with respect to the information it may consider." <u>United States v. Alexander</u>, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Thus, the Court should first calculate the applicable Guidelines range, and then apply the Section 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

III.     <u>Analysis</u>

     A.    <u>Sentencing Calculation</u>

The government respectfully submits that the following Guidelines calculation, which is the same as the government's estimated calculation in the plea agreement and which the defendant does not dispute, is correct:

5

Count One: Coercion and Enticement of a Minor

| | | |
|---|---|---:|
| Base Offense Level (U.S.S.G. § 2G1.3(a)) | | 28 |
| Plus: | A participant unduly influenced a minor to engage in prohibited sexual conduct (U.S.S.G. § 2G1.3(b)(2)(B)) | +2 |
| Plus: | The offense involved the use of a computer or an interactive computer service (U.S.S.G. § 2G1.3(b)(3)) | +2 |
| Plus: | The offense involved the commission of a sex act (U.S.S.G. § 2G1.3(b)(4)(A)) | +2 |
| Total adjusted offense level for Count One: | | 34 |

Count Two: Coercion and Enticement of a Minor

| | | |
|---|---|---:|
| Base Offense Level (U.S.S.G. §§ 2G2.1(a), 2G1.3(c)(1)) | | 32 |
| Plus: | Victim was greater than 12 but less than 16 years of age prohibited sexual conduct (U.S.S.G. § 2G2.1(b)(1)(B)) | +2 |
| Plus: | The offense involved the use of a computer or an interactive computer service (U.S.S.G. § 2G2.1(b)(6)(B)(i)) | +2 |
| Plus: | The offense involved the commission of a sex act (U.S.S.G. § 2G2.1(b)(2)(A)) | +2 |
| Total adjusted offense level for Count Two: | | 38 |

Count Five: Coercion and Enticement of a Minor

| | | |
|---|---|---:|
| Base Offense Level (U.S.S.G. § 2G1.3(a)) | | 28 |
| Plus: | A participant unduly influenced a minor to engage in prohibited sexual conduct (U.S.S.G. § 2G1.3(b)(2)(B)) | +2 |
| Plus: | The offense involved the use of a computer or an interactive computer service (U.S.S.G. § 2G1.3(b)(3)) | +2 |
| Plus: | The offense involved the commission of a sex act (U.S.S.G. § 2G1.3(b)(4)(A)) | +2 |

6

| | | |
|---|---|---|
| Total adjusted offense level for Count Five: | | 34 |

Multiple Counts Analysis

| Count | Adjusted Offense Level | Units |
|---|---|---|
| Count One | 34 | 1.0 |
| Count Two | 38 | 1.0 |
| Count Five | 34 | 1.0 |
| | Total Units: | 3.0 |
| | Combined Adjusted Offense Level: | 41 |

| | | |
|---|---|---|
| Plus: | The defendant is a repeat and dangerous sex offender against minors (U.S.S.G. § 4B1.5(b)(1)) | +5 |
| Total Combined Adjusted Offense Level: | | 46 |
| Less: | Acceptance of responsibility | -3 |
| Total Offense Level: | | 43 |

Based upon a Criminal History Category I, as is set forth in the PSR, see PSR ¶ 72; the applicable Guidelines range for the defendant is life imprisonment. See U.S.S.G. § 5A.

B.  A Significant Sentence Is Appropriate

The government respectfully submits that a sentence of 30 years' imprisonment—which is recommended by the U.S. Department of Probation and below the Guidelines range the government estimated in the defendant's plea agreement—is appropriate in light of the § 3553(a) sentencing factors and is sufficient, but not greater than necessary, to achieve the purposes of sentencing in this case.

First, the nature and circumstances of the defendant's sex offenses warrant a very serious sentence. Over at least half a decade, the defendant sought out underage male victims as young as 14 years old through messaging applications that catered to teens and LBGTQ+ individuals. He conversed with his victims about school, homework and after school jobs while simultaneously asking them for nude photos and videos and to meet for sex. As his victims finished their school day and afterschool jobs or left their homes and families, the defendant arranged to engage in sex acts with them in nearby neighborhoods or hotels. He repeatedly expressed his interest in "young guys," learned his victims real age, and engaged in sex acts with them before instructing his victims not to tell anyone so he would remain out of trouble. The defendant's pattern of conduct placed these vulnerable children at risk of serious harm, including

7

potential sexually transmitted diseases and emotional trauma that is likely to last their lifetimes. The Guidelines reflect these serious concerns.

Second, the defendant's conduct was not limited to messaging and exchanging child pornography with his victims. He was a hands-on offender who met his victims in his car, often picking them up near their homes or their schools, and took his victims to motels to engage in sexual acts. One of his victims described him as "pushy" about wanted to engage in sex acts and described how the defendant offered money and drugs to encourage the victim to agree to penetrative sex. The repeated hands-on nature of the defendant's offenses warrants a significant sentence. See New York v. Ferber, 458 U.S. 747 (1982) ("The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance.").

Finally, the sentence recommended by the government is necessary to provide specific and general deterrence and to protect the public from the defendant. For the defendant, this was not a one-time offense with a single victim. The defendant engaged in a pattern of seeking out vulnerable teenagers while living a double life as a deacon who was purportedly committed to the mission of helping vulnerable individuals. The Court's sentence should ensure that children are protected from the defendant going forward and send a message to society that the serious offense of coercing and enticing a minor is met with a commensurately serious punishment.

Contrary to the defendant's argument, a 30 year sentence in this case would not cause unwarranted sentencing disparities. Each of the cases the defendant cites in his sentencing letter are readily distinguishable. For example, United States v. Weinreb, No. 20-CR-06 (BMC) is irrelevant because it involved a different count of conviction and the applicable Guidelines range was far below the life sentence called for by the Guidelines in this case. As the defendant acknowledges, United States v. Arroyo, No. 16-CR-376 (JBW), and United States v. Gallimore, 18-CR-363 (JS), did not involve hands-on sexual abuse, whereas here, the defendant had sexual encounters with five identified victims on at least 12 different occasions. United States v. Syed, No. 18-CR-625 (NGG), similarly did not involve hands-on sexual abuse of minor victims. Those defendants and the conduct at issue in those cases is simply not similar to the repeated acts of coercion and enticement that resulted in sexual contact with vulnerable minors to which the defendant has pleaded guilty. Finally, United States v. Palmer, No. 19-CR-556 (CBA), and United States v. Mendez, No. 20-CR-226 (WFK), demonstrate that a significant sentence is appropriate for a "serial sexual predator"—which the defendant is—and those who "express[] a desire to abuse children"—which the defendant clearly did by repeatedly expressing his interest in sex with "young guys" and victimizing these young boys. Because these defendants and the facts of their cases are not similar to the present case, a sentence of 30 years' imprisonment is appropriate and will not result in unwarranted sentencing disparities.

Neither the defendant's apparent exclusive interest in older teen boys, nor the prevalence of such an attraction, warrants leniency. See Defendant's Submission, at 4. As Dr. Calkins acknowledges, "that interest is, of course, illegal." Id. The defendant's conduct spanned six years and involved multiple underage victims who were coerced and enticed into engaging in various sex acts with the defendant and sharing nude photos and videos. That fact that the defendant did not victimize even younger children or both males and females does not diminish

the seriousness of his conduct or the danger he poses.  To the contrary, the defendant targeted a specific set of teenage victims (aged 14 to 16) who had ready access to the Internet, were in the midst of puberty and the attendant brain and physical changes and would be likely to keep his secret rather than face the shame and embarrassment of disclosing that they were experimenting sexually and meeting a middle-aged man for sex in a car or hotel.  While the defendant's counsel suggests there is a low likelihood of the defendant abusing children again, homosexual pedophiles commit more abuse than heterosexual pedophiles and "pedophiles offend in their later years at a greater rate than other sexual offenders."[5]  Moreover, Dr. Calkins's report indicates that the defendant denies—contrary to the overwhelming evidence—that he "intentionally sought out minors."  Calkins Report, at 3.  The defendant's refusal to fully acknowledge his conduct further demonstrates the need for a significant sentence.

In sum, the defendant has demonstrated that he poses a significant danger to society and a sentence of 30 years' imprisonment is sufficient, but not greater than necessary, to achieve the purposes of sentencing in this case.

C.  Sexual Offender Treatment

The defendant has not received sex offender treatment while detained at the Metropolitan Detention Center ("MDC")—the MDC does not offer such treatment—but such treatment may be available to the defendant depending on his designated Bureau of Prisons ("BOP") facility.  The BOP offers sex offender treatment programs to defendants who are sentenced to at least 12 months' imprisonment and who volunteer for such treatment.  The treatment lasts at least 12 months and is in the form of group therapy.  Currently, sex offender treatment programs are offered at FMC Carswell, FMC Devens, FCI Elkton, FCI Englewood, FCI Marianna, USP Marion, FCI Petersburg Medium, FCI Seagoville and USP Tucson.

---

[5] Ryan C. Hall & Richard C. Hall, A Profile of Pedophilia:  Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues, 82 Mayo Clinic Proc. 457, 457-58 (2007).

IV.     Conclusion

        For the foregoing reasons, the government respectfully requests that the Court impose a sentence of 30 years' imprisonment.

Respectfully submitted,

BREON PEACE
United States Attorney

By:           /s/      
        Patrick J. Campbell
        Trial Attorney, Fraud Section
        Criminal Division
        U.S. Department of Justice
        (202) 262-7067

cc:     Clerk of the Court (EK) (by email)
       James Darrow, Esq. (by ECF and email)